In the

# United States Court of Appeals

### For the Seventh Circuit

No. 07-2628

HERBERT JOHNSON, SR.,

*Petitioner-Appellant,*

*v.*

MICHAEL THURMER,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 1:04-cv-00795—**Patricia J. Gorence**, *Magistrate Judge.*

ARGUED JANUARY 14, 2009—DECIDED OCTOBER 18, 2010

Before CUDAHY, KANNE, and TINDER, *Circuit Judges.*

KANNE, *Circuit Judge.* Herbert Johnson was charged with five counts of armed robbery in Wisconsin state court, convicted by a jury, and sentenced to sixty-eight years in prison. After Johnson's no-merit appeal concluded, he attempted to traverse the murky waters of state collateral attack, bringing new claims of ineffective assistance of trial and appellate counsel. The state courts held that Johnson's new claims were procedurally de-

faulted because he had not raised them in response to the initial no-merit report. Johnson then filed a writ of habeas corpus in the United States District Court for the Eastern District of Wisconsin, again asserting ineffective assistance of trial and appellate counsel. The district court denied the writ on the merits, but only after holding that the Wisconsin court ruling of procedural default was not an adequate and independent state ground barring federal review. Johnson now appeals the denial of the writ. We agree with the district court's ruling that habeas review was not precluded by state procedural default. Because Johnson's ineffective assistance of counsel claims lack merit, we affirm the denial of the writ.

## I. BACKGROUND

In the muggy July and August of 1999, five similar robberies occurred throughout greater Milwaukee, four at various Payless Shoes stores and one at an area Family Dollar. During each robbery, two men entered the store, ostensibly as shoppers, and one eventually approached an employee with a gun and demanded money. Police came to suspect Johnson as the gunman of this pair when he reentered a store he had already robbed and was recognized by one of the employees, who recorded his license number and advised the authorities. Based on that tip, police located and arrested Johnson. They then searched the common areas of his residence with his girlfriend's consent, finding clothing and other items used in the robberies. Police also con-

ducted an in-person lineup, where Johnson was identi-
fied as the gunman by witnesses to each crime.

Counsel was appointed for Johnson, an event that
marked the beginning of a rocky relationship between
Johnson and his counsel in general. Trial preparation
proceeded uneventfully, at least until the week before
trial. At that point, Johnson's counsel reported to the
judge's clerk that he had an appointment to see a psychia-
trist on the day of trial and, in doing so, made a state-
ment that led the clerk to believe that he may have
been suicidal. On the morning scheduled for trial, an
in-chambers conference was held concerning counsel's
remarks. Johnson was not present at that conference.
During that meeting, counsel reported that the clerk had
misunderstood him and that he was not suicidal. He
admitted to being on medication for depression, but
said he felt fine and was able to proceed. The following
day, the state trial judge provided a verbal summary of
the in-chambers conference to Johnson, confirmed that
counsel had discussed the matter with him, and verified
that Johnson wished to continue.

Trial commenced that same day, with the bulk of the
State's case consisting of witnesses who identified
Johnson as the gunman at each of the robberies. One
witness, Jessica Zaccone, identified Johnson as the man
who robbed her store and provided a description of
Johnson from the day of the robbery. In her testimony,
Zaccone included one detail about Johnson's appear-
ance that she had not reported to police in reference to
the charged robbery. That detail was actually from a

description of Johnson regarding a second, uncharged robbery at the same store. Defense counsel failed to object or have the testimony stricken, even though testimony relating to uncharged crimes was prohibited by court order. Defense counsel did file a motion for a mistrial based on Zaccone's testimony at the conclusion of the State's case. That motion was denied.

Johnson was found guilty by a jury on all counts, sentenced, and counsel was appointed to represent him on appeal. Appellate counsel filed a no-merit report with the Wisconsin Court of Appeals pursuant to Wis. Stat. § 809.32. In his report, counsel identified four issues of arguable merit; notably, counsel did not identify any ineffective assistance of trial counsel. After Johnson failed to respond to the report, the Court of Appeals examined the issues identified in the report and conducted an independent review of the record. The court found no issues of merit and affirmed Johnson's conviction. The Wisconsin Supreme Court later denied Johnson's petition for review.

Johnson then began state collateral attack, filing a motion for post-conviction relief pursuant to Wis. Stat. § 974.06. Johnson raised two new claims: one for ineffective assistance of trial counsel, for various trial errors, and one for ineffective assistance of appellate counsel, for not addressing trial counsel's errors in the no-merit report. The Wisconsin circuit court denied the petition, holding both claims were defaulted because they related to errors by trial counsel and, thus, should have been raised in response to the no-merit report. Johnson ap-

pealed, now claiming there was sufficient cause for his failure to respond to the no-merit report, as his appellate counsel did not provide record documents in a timely fashion. The Wisconsin Court of Appeals affirmed, holding that the claims were defaulted and that the failure to provide documents was not a sufficient reason to set aside that default. The Wisconsin Supreme Court again denied review.

Johnson then filed a writ of habeas corpus in the United States District Court for the Eastern District of Wisconsin pursuant to 28 § U.S.C. 2254, claiming ineffective assistance of appellate and trial counsel. The district court found Johnson's claims were not defaulted because the state court ruling was not an adequate and independent procedural ground barring federal review. The court then held that Johnson's claims lacked merit and denied the writ, but granted Johnson a certificate of appealability for both of his ineffective assistance of counsel claims. Johnson timely appealed.

## II. ANALYSIS

### A. *Procedural Default*

We must first determine whether Johnson's ineffective assistance of counsel claims were procedurally defaulted. The district court held they were not, and we review a determination of procedural default *de novo*. *Holmes v. Hardy*, 608 F.3d 963, 967 (7th Cir. 2010). If a claim was held to be defaulted by a state court on the basis of an adequate and independent procedural ground, federal

habeas review is at an end unless a petitioner can show cause for the default and prejudice attributable thereto. *Harris v. Reed*, 489 U.S. 255, 262 (1989). A state procedural ground is independent if it was expressly relied on by the state court in rejecting the claim, and it is adequate if it is a clearly established and consistently followed state practice at the time it is applied. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991); *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010). Procedure applied in an unprincipled, inconsistent, or freakish manner is inadequate and will not preclude federal habeas review. *Barksdale v. Lane*, 957 F.2d 379, 382 (7th Cir. 1992); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990).

In finding that Johnson's ineffective assistance of counsel claims were not defaulted, the district court relied on our holding in *Page v. Frank*, 343 F.3d 901 (7th Cir. 2003). In *Page*, a similarly situated Wisconsin prisoner attempted to raise a claim of ineffective assistance of counsel on state collateral attack. The Wisconsin courts held that the claim was defaulted because it was capable of being raised in response to the earlier no-merit report but was not raised at that time. We held that the default was not based on an adequate state ground because of various inconsistencies in Wisconsin's appellate procedure. On one hand, Wisconsin courts held that ineffective assistance of counsel claims were defaulted if they related to trial conduct and were not brought in response to the no-merit report. On the other, the state courts required ineffective assistance claims that dealt with trial errors to be raised in a separate post-conviction motion in the trial court prior

to the no-merit appeal or they were waived. In essence, Wisconsin rulings of default were not based on an adequate state ground barring federal habeas review because Wisconsin procedure required the petitioner to travel an inconsistent and confusing path by asserting "a claim before the court of appeals that, under established Wisconsin case law, he could not bring initially in that forum because it had not been brought to the attention of the trial court." *Id.* at 909.

Those inconsistencies relevant in *Page* were also present when Johnson sought Wisconsin state review. To determine whether a state procedural ground is adequate, we assess the ground as it existed when it was applied by the state courts. *Ford*, 498 U.S. at 424; *McKee*, 598 F.3d at 382; *Franklin v. Gilmore*, 188 F.3d 877, 882 (7th Cir. 1999). Tellingly, if Johnson had responded to the no-merit report claiming that his appellate counsel was deficient for not addressing trial counsel's errors, he would have been subject to the same Catch-22 that we found dispositive in *Page*, among other problems.[1]

---

[1] In *Page,* we relied on another reason, also applicable here, why a criminal defendant could not waive a claim in the manner suggested by the Wisconsin courts. A criminal defendant possesses a Sixth Amendment right to effective assistance of counsel throughout his first appeal as of right. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). The Supreme Court has made clear that there is a presumption against finding a waiver of the right to counsel and that ordinarily waivers must reflect "an intentional relinquishment or abandonment of

(continued...)

In his brief, respondent urges us to reconsider *Page*, stating that we have misapprehended Wisconsin appellate procedure, yet he cites no authority to resolve the tensions we have identified. Counsel went on to admit at oral argument that Wisconsin's appellate procedures were inconsistent at the time Johnson's appeal was decided. Putting the proverbial nail in the coffin, a Wisconsin state court decision issued shortly after we heard oral argument confirmed that the relevant cases "create inconsistencies," along with "much confusion and delay." *State ex rel. Panama v. Hepp*, 758 N.W.2d 806, 812-13 (Wis. Ct. App. 2008). Those inconsistencies rendered the state procedural ground inadequate in *Page*, and because they applied to Johnson during his state court appeal, they have the same effect today.[2]

---

[1] (...continued)
a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). There is clear tension between the requirement that a waiver of counsel be clear and intentional and the notion that a petitioner can waive that right simply by failing to respond to a no-merit report. *See Page*, 343 F.3d at 909.

[2] A recent Wisconsin Supreme Court case, *State v. Allen*, 786 N.W.2d 124 (Wis. 2010), briefly addressed *Page* and the inconsistencies bound up in Wisconsin's appellate procedures. Whether *Allen* will resolve the confusion discussed above and permit a Wisconsin procedural default holding to serve as an adequate and independent state ground is a question for another day, as we must assess the consistency of Wisconsin's procedures at the time of Johnson's appeal. *See, e.g.,*
(continued...)

B. *Ineffective Assistance of Counsel*

We now turn to the merits of Johnson's appeal. Johnson argues that his appellate counsel was ineffective for failing to raise trial counsel's errors in the initial no-merit report. He also claims that his trial counsel was ineffective for failing to object to testimony related to an uncharged crime, for failing to object to the introduction of evidence stemming from a search of Johnson's home, and for failing to inform Johnson of his mental health problems before trial. The district court held that both ineffective assistance claims lacked merit and denied the writ.

We note at the outset that the applicable standard of review depends upon whether those claims were dealt with on the merits by the state courts. If they were, the circumscribed standard of the Antiterrorism and Effective Death Penalty Act (AEDPA) applies; if not, our review is significantly less constrained. *George v. Smith*, 586 F.3d 479, 484 (7th Cir. 2009). In this case, neither one of Johnson's ineffective assistance claims was decided on the merits in the state courts. In the final state ruling, the Wisconsin Court of Appeals decided just one of John-

---

[2] (...continued)
*Timberlake v. Davis*, 409 F.3d 819, 821 (7th Cir. 2005) ("[A] state rule that materially changed after the time of the supposed default cannot be used to show that a federal claim had been forfeited.").

son's contentions on the merits: the court held that his appellate counsel's failure to provide records was not a sufficient reason to set aside the circuit court's ruling of procedural default. That ruling did not dispose of any ineffective assistance of counsel claims on their merits, but addressed the separate and distinct question of whether there was sufficient cause under Wisconsin case law to set aside the default. Because none of his claims were decided on the merits, we apply the pre-AEDPA standard of 28 U.S.C. § 2243, instructing us to "dispose of the matter as law and justice requires." We interpret this to require *de novo* review. *McGee v. Bartow*, 593 F.3d 556, 572 n.10 (7th Cir. 2010).

To establish ineffective assistance of trial counsel, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 689-92 (1984); *United States v. Banks*, 405 F.3d 559, 568-69 (7th Cir. 2005). We begin with the assumption that Johnson's counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment*." Strickland*, 466 U.S. at 690. To establish deficient performance in spite of that assumption, Johnson must show that counsel's representation "fell below an objective standard of reasonableness" based on prevailing norms of professional conduct. *Id.* at 688. Even if Johnson can establish deficient performance, his task is not at an end—he must also demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

Johnson claims that trial counsel was ineffective for failing to disclose counsel's mental health problems prior to trial and that those problems had a generally detrimental impact on counsel's trial performance. We can dispense with the disclosure aspect of this claim fairly quickly, as the record reflects that Johnson was made aware of the concerns regarding his counsel's mental health. While Johnson was not present at the in-chambers conference on the matter, the trial judge informed him shortly thereafter that there were concerns raised regarding counsel's depression, that counsel was confronted about those concerns, and that counsel reported he felt fine and able to handle the case. The trial judge asked Johnson if counsel had briefed him on the matter, and Johnson reported that counsel had and that he wanted to proceed. As such, Johnson's counsel did not fail in any duty of candor to his client and was not deficient on this point. As for Johnson's general claim that his counsel's depression tainted his guidance at trial, Johnson has pointed to no specific acts to establish that counsel's problems led to deficient performance, and we can find none. So far as we can tell, Johnson's only claim is that, had he been aware of counsel's depression, he would have fired him. While perhaps true, this does not meet the burdens imposed by *Strickland* to point to specific instances demonstrating deficient performance and prejudice flowing therefrom. *See Berkey v. United States*, 318 F.3d 768, 772-73 (7th Cir. 2003).

Johnson next claims that trial counsel was ineffective for failing to object to witness testimony that linked him to an uncharged crime and for failing to have that testi-

mony stricken from the record. At trial, a witness to one robbery identified Johnson as the man who robbed her store and testified about the description she gave to police after the robbery. During that testimony, the witness inadvertently disclosed one detail from a different description she gave regarding another similar robbery that Johnson was suspected of committing. Johnson's claim that his counsel was deficient for not objecting to this testimony fails, as it is clear from the record that the witness's response was unexpected and sudden, likely the product of nervousness during testimony, and counsel could not have objected prior to her response. His claim that counsel was deficient for not having the testimony stricken fails as well. Even though the testimony could have been stricken, as it violated the trial judge's order, the decision not to have it stricken was likely a sound tactical decision, designed to not draw attention to the very issue Johnson's counsel rightfully wished to bury. It is well established that our scrutiny of counsel's trial strategy is to be deferential and that we do not second guess the reasonable tactical decisions of counsel in assessing whether his performance was deficient. *United States v. Recendiz*, 557 F.3d 511, 531 (7th Cir. 2009); *Rodriguez v. United States*, 286 F.3d 972, 986 (7th Cir. 2002). With that deferential eye, we conclude that counsel's performance was not deficient on this point.

Johnson's final claim regarding trial counsel, brought in his supplemental *pro se* brief, is that counsel was ineffective for failing to move to suppress evidence from a search of his residence and for failing to investigate

that matter prior to trial. When an ineffective assistance claim is based on introduction of evidence obtained in alleged violation of the Fourth Amendment, the defendant must also prove, over and above his *Strickland* showing, "that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *Ebert v. Gaetz*, 610 F.3d 404, 411 (7th Cir. 2010). Johnson's ineffective assistance of counsel claim fails for the simple reason that his Fourth Amendment claim lacks merit. While Johnson documents inconsistencies in the detective's report regarding the precise time Johnson's girlfriend gave consent to search their residence, the record nonetheless shows that valid consent was provided. Consent to search common areas of a shared residence is generally valid if given by a person with actual or apparent authority, *United States v. Aghedo*, 159 F.3d 308, 310 (7th Cir.1998), and Johnson's girlfriend clearly had actual authority here. We note out of an abundance of caution that even if Johnson's Fourth Amendment claim had merit, there is no appreciable probability that the verdict would have changed if the evidence had been excluded—the State produced numerous witnesses to each robbery, each of whom readily identified Johnson as the gunman for these crimes.

Johnson last claims that his appellate counsel was ineffective for failing to raise trial counsel's errors in the no-merit report. To prevail on this claim, Johnson must show that appellate counsel failed to raise an obvious issue that is stronger than the other claims

raised and that prejudice flowed from that failure. *Martin v. Evans*, 384 F.3d 848, 851 (7th Cir. 2004). Prejudice exists if "there is a reasonable probability that the issue his appellate attorney failed to raise would have altered the outcome of the appeal, had it been raised." *Brown v. Finnan*, 598 F.3d 416, 425 (7th Cir. 2010). Because Johnson's appellate counsel claim is predicated on trial counsel's errors, the two claims rise and fall together. *See Robertson v. Hanks*, 140 F.3d 707, 712 (7th Cir. 1998). We have already concluded that Johnson's trial counsel was not deficient and, as such, any ineffective assistance of trial counsel claim was comparably weaker than the other issues raised by appellate counsel in the no-merit report. For similar reasons, those issues would not have had any appreciable impact on the denial of his appeal. As such, his ineffective assistance claim lacks merit.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the denial of Johnson's writ of habeas corpus.