# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 2, 2012

No. 10-50567

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

MARA LEE GREENOUGH,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before GARZA, CLEMENT, and SOUTHWICK, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Mara Lee Greenough pled guilty to two counts of possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C). Her Pre-Sentence Report ("PSR") indicated that some of the heroin sold by Greenough caused the death of Richard Reitz. Because of this death, the PSR calculated Greenough's Guidelines sentence under United States Sentencing Guidelines § 2D1.1(a)(2). She was sentenced to 240 months imprisonment for each count, to be served concurrently. Greenough appeals her sentence on three grounds: (1) the district court violated *Apprendi* by enhancing her sentence for the death which was not part of her plea; (2) the district court erred in applying U.S.S.G. § 2D1.1(a)(2) because the death was not part of the crime to which she pled; and

No. 10-50567

(3) the evidence was insufficient to establish that Reitz died from the heroin obtained from Greenough. We AFFIRM the ruling of the district court.

## FACTS AND PROCEEDINGS

Mara Lee Greenough was indicted for two counts of possession with intent to distribute a mixture or substance containing a detectable amount of heroin in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C). Count one related to conduct occurring on or about July 27, 2009, and count two related to conduct occurring on or about October 22, 2009. Greenough pled guilty to both counts without a plea agreement. She did not plead guilty to death or serious bodily injury resulting from the use of these substances.[1]

On July 27, 2009, police found heroin and other controlled substances at Greenough's residence. On October 22, 2009, felony arrest warrants were executed, heroin and other controlled substances were again discovered, and she was arrested and released on bond. Upon her release, Greenough continued selling heroin. On November 20, 2009, Richard Reitz died at his home. He was found with a syringe in his arm, a metal spoon with heroin residue was on the table, and the medical examiner reported that Reitz died of multiple drug intoxication.

At a subsequent search on November 20, 2009, officers found additional controlled substances including heroin. Geenough was arrested again on November 30, 2009. Greenough admitted selling drugs to individuals including Reitz. She did not, however, admit to selling Reitz the specific drugs that ultimately caused his death.

---

[1] *See* PSR p. 1, "Offense: Counts One and Two: Possession with Intent to Distribute a Controlled Substance; . . . Not more than 20 years imprisonment" *cf*. 21 U.S.C. § 841(b)(1)(C) "such person shall be sentenced to a term of imprisonment of not more than 20 years and if death or serious bodily injury results from the use of such substance shall be sentenced to a term of imprisonment of not less than twenty years or more than life")

No. 10-50567

A friend of Reitz, Christopher Guerrero, reported that Greenough was Reitz's main supplier of heroin. He stated that he and Reitz obtained heroin from Greenough until June of 2009 when Guerrero left Austin, but he believed Reitz continued purchasing from Greenough. Guerrero knew Reitzhad once purchased heroin from a Hispanic male whose supplier was also Greenough. In August of 2009, Greenough saw Guerrero and gave him more heroin. Some time after Guerrero left Austin, Reitz told him that Greenough had been "busted" by the police. The agent who interviewed Guerrero, Michael Robert Hill, testified that Guerrero "truly believed that Mara Greenough was the source of heroin for Richard Reitz before he died."

Based on Reitz's death, Greenough's PSR calculated a base offense level of 38 under U.S.S.G. § 2D1.1(a)(2). The PSR applied a three-level downward adjustment to 35 for acceptance of responsibility. Greenough's criminal history category was V. Because the applicable Guidelines range was 262-327 months of imprisonment and the statutory maximum was 240 months for each count, her Guidelines range of imprisonment was 240 months.

Greenough objected to the PSR, arguing she was not responsible for Reitz's death.[2] She argued the government had not established beyond a reasonable doubt that her heroin distribution was the cause of his death, which the medical examiner reported to be from "multiple drug intoxication." She asserted the government had not presented evidence heroin was in Reitz's system at the time of his death, nor whether any heroin present chemically matched the heroin that she possessed at her arrests. She also argued Guerrero's statement failed to establish she supplied Reitz with heroin after June 2009, but did establish that Reitz had multiple suppliers of heroin. Greenough argued that the appropriate

---

[2] The original PSR indicated that Greenough was responsible for another death. She also objected to this finding and the probation officer removed it for lack of evidence.

3

base offense level was 24, which would be reduced for acceptance of responsibility and result in a total offense level of 21.

At sentencing, Greenough told the judge she did not know she was being charged with a death when she pled guilty. Her sentencing memorandum requested a downward departure based on her troubled background. She also argued the evidence failed to establish beyond a reasonable doubt that she supplied drugs to Reitz after June 2009, the autopsy showed Reitz died of multiple drug toxicity and heroin was one of 17 drugs found in his system, and there was no proof it was the same type of heroin seized from Greenough. Lastly, she contended that application of the statutory enhancement under § 841 violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), as did any application of a mandatory minimum.

Defense counsel contended Guerrero's statements to agent Hill did not prove Greenough sold Reitz drugs before his death in November 2009. Counsel noted that the medical examiner's report did not list heroin as the cause of death, but rather multiple drugs, and that the type of heroin in Reitz's system was not analyzed. Greenough's attorney also questioned agent Hill about whether Reitz died from heroin. Hill responded "[b]ased on the evidence of the medical examination and how they found the body, it's an indication that he had been using heroin." Hill testified he did not see heroin listed in the toxicology report.

The government argued the highest concentration of drugs were morphine and monoacetylmorphine which are monikers for heroin. The government claimed the toxicology report and medical examiner's report showed these were the drugs that caused or contributed to Reitz's death. The medical examiner's report of multiple drug toxicity was admitted as an exhibit.

The district court overruled Greenough's objection and found by a preponderance of the evidence she had supplied the drugs to Reitz "that

No. 10-50567

substantially contribute or contributed to his demise, to his death." The court sentenced Greenough to 240 months of imprisonment on each count, with the sentences to run concurrently. This timely appeal followed.

## STANDARD OF REVIEW

This court reviews sentences in two steps. "In reviewing the reasonableness of a defendant's sentence, we 'must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range.'" *United States v. Hernandez-Galvan*, 632 F.3d 192, 196 (5th Cir. 2011) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). "If the sentence is procedurally sound, we then consider the 'substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *United States v. Delgado-Martinez*, 564 F.3d 750, 751 (5th Cir. 2009). "In exercising this bifurcated review process, we continue to review the district court's application of the Guidelines *de novo* and its factual findings for clear error." *Id.*

## DISCUSSION

A.     Application of *Apprendi*

Greenough argues that the district court violated *Apprendi* because the allegation of death was not charged in the indictment or proven to a jury beyond a reasonable doubt. She contends this was a statutory enhancement under § 841(b)(1)(C) and argues that only the offense of conviction can trigger a mandatory minimum sentence. The government argues Greenough incorrectly assumes she received a statutory penalty enhancement due to the resulting death.

The Supreme Court has held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. So long as the ultimate sentence

5

remains within the statutory range, we have held *Apprendi* is not violated. *See United States v. Cathey*, 259 F.3d 365, 368 n.12 (5th Cir. 2001). Thus, the question is whether Greenough's penalty was "beyond the prescribed statutory maximum." *Apprendi*, 530 U.S. at 490.

The district court did not sentence Greenough under the enhanced statutory provisions in § 841(b)(1)(C) which provide for a mandatory minimum sentence of 20 years and a maximum sentence of life "if death or serious bodily injury results from the use of such substance." Instead, the court's Statement of Reasons said Greenough's offense did not carry a mandatory minimum sentence indicating that she was sentenced under the general provisions of the subsection which provide for a *maximum* sentence of 20 years of imprisonment.[3] Greenough was not subject to a mandatory minimum sentence, but rather a statutory maximum. Because the 240 month sentence was not beyond the statutory maximum, we hold that *Apprendi* was not violated and affirm Greenough's sentence.

B.    Interpretation of U.S.S.G. § 2D1.1(a)(2)

Greenough's indictment alleged two counts of possession with intent to distribute heroin. She argues that the district court erred by applying U.S.S.G. § 2D1.1(a)(2), which provides a base level offense of 38 if the defendant is convicted under 21 U.S.C. § 841(b)(1)(C) "and the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance." U.S.S.G. § 2D1.1(a)(2). She claims her "offense of conviction" was possession with intent to distribute which, standing alone, was not established as the cause of Reitz's death. The Guidelines, she notes, define "offense" as the

---

[3] Greenough's sentence was enhanced under the Sentencing Guidelines § 2D1.1(a)(2), but always remained within the statutory maximum.

No. 10-50567

offense of conviction and all relevant conduct; she contends the district court erred by defining her "offense of conviction" too broadly.[4]

In response, the government claims that conduct surrounding the charged offense may be considered under the Sentencing Guidelines regardless of whether such conduct and consequences were explicitly included in the indictment. The government further contends that Greenough did not raise this argument below.

We must answer two questions. First, does U.S.S.G. § 2D1.1(a)(2) apply when the indictment does not charge resulting death or serious bodily injury? Second, did Greenough properly raise her objections to the application of U.S.S.G. § 2D1.1(a)(2) at sentencing?

      1.     Meaning of the Sentencing Guideline

Greenough pled guilty to violating 21 U.S.C. § 841(a)(1) and (b)(1)(C) which make it illegal to "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense a controlled substance." § 841(a)(1). Greenough's PSR applied U.S.S.G. § 2D1.1(a)(2) which provides for a higher Guidelines range when an individual is convicted under Section 841(b)(1)(C) "and the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance." Similar to her argument under *Apprendi*, Greenough alleges that it was error to apply the higher Sentencing Guideline for death resulting in the absence of an indictment alleging death. The government counters that the Sentencing Guidelines permit a judge to consider all relevant conduct and outcomes in determining the proper sentence regardless of the wording in the indictment. The government further argues that evidence of death allegedly caused by a heroin overdose was relevant to the Guideline adjustment under § 2D1.1. *See* U.S.S.G. § 1B1.4 ("[i]n

---

[4] Greenough cites *United States v. Bradford*, 499 F.3d 910, 918-19 (8th Cir. 2007), and *United States v. Pressler*, 256 F.3d 144, 157-58 n.7 (3d Cir. 2001), to support her contention.

determining the sentence to impose within the Guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law"). The question for this court is whether U.S.S.G. § 2D1.1(a)(2) permits relevant conduct not intrinsic to the offense of conviction to be considered by the sentencing court in calculating the Guidelines level.

This court has not previously addressed the meaning of the phrase "the offense of conviction establishes" in § 2D1.1(a)(2), but has recognized other circuits' attempts to clarify the phrase's meaning. *See Carbajal*, 290 F.3d at 284 n.9. Relying on application note 1 to U.S.S.G. § 1B1.1, which defines "offense" as the offense of conviction and all relevant conduct, the Third Circuit has held that the definition of "'offense of conviction' is narrower than 'offense.'" *Pressler*, 256 F.3d at 157 n.7. While this conclusion was in *dicta*, the Third Circuit more recently cited *Pressler* for the proposition that the phrase "'offense of conviction' includes only the substantive crime for which a particular defendant was convicted." *United States v. Aquino*, 555 F.3d 124, 129 (3d Cir. 2009). The Tenth Circuit has read this phrase in a similarly narrow fashion. *See United States v. Blackwell*, 323 F.3d 1256, 1260 (10th Cir. 2003). Other circuits, however, have sentenced individuals in a manner that would imply a broader interpretation of the phrase. *See United States v. Shah*, 453 F.3d 520 (D.C. Cir. 2006) (holding that a "death resulting" Sentencing Guideline may be applied to an individual who pled guilty to conspiracy to import, distribute, and possess with intent to distribute heroin when one of his drug courriers died from ingesting the heroin to smuggle it and the written plea agreement conceded the death); *United States v. Rodriguez*, 279 F.3d 947, 951 (11th Cir. 2002) (when the plea agreement admits selling drugs, concedes a purchaser died with the drugs in his system, but the defendant questions whether an intervening cause breaks the chain of

causation, it was not clear error to apply § 2D1.1(a)(2)); *United States v. Deeks*, 303 F. App'x 507, 509 (9th Cir. 2008) (applying § 2D1.1(a)(2) to enhance a drug importation charge when a customer died using the cocaine); *see also United States v. Bradford*, 499 F.3d 910, 919 (8th Cir. 2007) (while § 2D1.1(a)(2) did not figure into the determination of Bradford's base offense level, the court is permitted to consider uncharged relevant conduct to justify a departure from the Sentencing Guidelines when an individual pleads guilty to conspiracy to distribute heroin and a buyer dies from the heroin distributed).

"Our interpretation of the Sentencing Guidelines is subject to the ordinary rules of statutory construction." *Carbajal*, 290 F.3d at 283. Thus, we first analyze the text of the Guideline. § 2D1.1 does not define "offense of conviction," but § 1B1.2(a) provides guidance on the phrase's meaning.

> Determine the offense guideline section in Chapter Two (Offense Conduct) applicable to the *offense of conviction* (i.e., *the offense conduct charged in the count of the indictment* or information of which the defendant was convicted). However, in the case of a plea agreement (written or made orally on the record) containing a stipulation that specifically establishes a more serious offense than the offense of conviction, determine the offense guideline section in Chapter Two applicable to the stipulated offense.

U.S.S.G. § 1B1.2(a) (emphasis added). The commentary background to § 2D1.1 further explains "[t]he base offense levels in § 2D1.1 are either provided directly by the Anti-Drug Abuse Act of 1986 or are proportional to the levels established by statute, and apply to all unlawful trafficking."

U.S.S.G. § 2D1.1 applies to drug convictions under 21 U.S.C. §§ 841(b)(1)(A)-(C) and 960 (b)(1)-(3). Greenough pled guilty to violating § 841(b) which contains a decision tree prescribing statutory penalties.

> In the case of a controlled substance in schedule I or II, gamma hydroxybutyric acid . . . or 1 gram of flunitrazepam, . . . such person shall be sentenced to a term of imprisonment of not more than 20 years and if death or serious bodily injury results from the use of

such substance shall be sentenced to a term of imprisonment of not less than twenty years or more than life, a fine not to exceed the greater of that authorized in accordance with the provisions of title 18 or $1,000,000 if the defendant is an individual or $5,000,000 if the defendant is other than an individual, or both.

21 U.S.C. § 841(b)(1)(C). Under the statute, the first determination is the quantity of drugs which are tied to specific minimum and maximum penalties. § 841(b). The second determination triggers a higher penalty if "death or serious bodily injury results from the use of such substance." § 841(b)(1)(A)–(C), (E). Subsection 841(b)(1)(C) specifically provides a statutory maximum of 20 years if death does not result, but a statutory minimum of 20 years and maximum of life if death results.

The Ninth Circuit has recognized that § 2D1.1(a)(2) follows a similar pattern. See *Deeks* 303 F. App'x at 509 (citing *United States v. Houston*, 406 F.3d 1121, 1122-24 (9th Cir. 2005), as a model for interpreting § 2D1.1(a)(2) because it interprets 21 U.S.C. § 841(b)(1)(C) "which contains language nearly identical to U.S.S.G. § 2D1.1(a)(2)"). The Sentencing Guidelines instruct that the base offense level should be the greatest level specified in the Drug Quantity Table, § 2D1.1(a)(5), or a higher amount if "the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance." U.S.S.G. § 2D1.1(a)(2). The similarities between the language indicate that the offense level was intended to mirror the criminal statute. We now hold that U.S.S.G. § 2D1.1(a)(2) applies only when the second prong of the statute, i.e. that death or serious bodily injury results, is also part of the crime of conviction.

Greenough pled guilty only to possession with intent to distribute under § 841(b) without the statutory enhancement for resulting death or serious bodily injury. Further, the Statement of Reasons clearly stated that her statutory maximum sentence was 20 years, the maximum if resulting death was not charged under § 841(b)(1)(C). Thus, her "offense of conviction" does not

"establish[] that death or serious bodily injury resulted from the use of the substance" and § 2D1.1(a)(2) should not have applied to Greenough.

### 2.     Plain Error

Even though we hold that U.S.S.G. § 2D1.1(a)(2) should not have applied to Greenough because her indictment did not address, and she therefore did not plead guilty to, Reitz's death, she did not object to its application at sentencing, and only now raises the objection on appeal.  At sentencing, Greenough and her attorney both objected to the *evidence* connecting Reitz's death to Greenough's heroin distribution.[5]  However, Greenough never objected to the application of U.S.S.G. § 2D1.1(a)(2) at sentencing.  Because she failed to raise this objection at sentencing, we review the application for plain error. *Puckett v. United States*, 556 U.S. 129, 129 S. Ct. 1423, 1428-29 (2009).  Plain error review examines whether there was (1) an error, (2) that was "clear or obvious, rather than subject to reasonable dispute," and (3) that "affected the appellant's substantial rights."  *Id.* at 1429.  If all three prongs are satisfied, this court "has the *discretion* to remedy the error–discretion which ought to be exercised only if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."  *Id.* (internal quotation marks omitted).

Although it was error to apply § 2D1.1(a)(2) when Greenough's offense of conviction did not establish that death resulted, she cannot show the error rises to the high threshold of plain error.  The error was subject to reasonable dispute.  The district court considered sentences upheld by other circuits which applied § 2D1.1(a)(2) in the absence of an explicit statement in the indictment that death resulted including the D.C. Circuit's opinion in *Shah*, the Eleventh Circuit's opinion in *Rodriguez*, and the Ninth Circuit's ruling in *Deeks*, to support the application of § 2D1.1(a)(2) to Greenough.   The different holdings on

---

[5] Discussed in Section C *infra.*

No. 10-50567

§ 2D1.1(a)(2)'s application show the error was not "clear or obvious," but "subject to reasonable dispute." Because Greenough cannot satisfy the second prong of the plain error test, we do not find plain error.

C.    Sufficiency of the Evidence

Because application of U.S.S.G. § 2D1.1(a)(2) was not plain error, we examine whether the district court erred in finding there was sufficient evidence to establish that Reitz died from heroin provided by Greenough. This question concerns which facts the district judge could use to sentence Greenough, but does not concern whether a specific Sentencing Guideline applies. Greenough claims that sufficient questions exist as to the veracity of any allegation her heroin was responsible for Reitz's death. She contends there is little evidence to establish both factual and proximate causation. Further, she alleges the government failed to investigate alternative causes of death and did not prove Reitz's death was caused "solely" by Greenough's heroin. The government contends there was sufficient evidence to find Greenough provided the drugs that caused Reitz's death, including testimony that Greenough supplied heroin to Reitz, his death was due to "multiple drug intoxication," metabolized heroin was found in his blood and urine, he was found with a fresh needle mark, and there were syringes of heroin on his table.

We review factual findings by the district court for clear error. *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008). "There is no clear error if the district court's finding is plausible in light of the record as a whole." *Id.* In determining the facts relevant to the Guidelines, the district court must find the facts by a preponderance of the evidence. *See United States v. Stevens*, 487 F.3d 232, 246 (5th Cir. 2007). "[T]he district court may consider any information which bears 'sufficient indicia of reliability to support its probable accuracy,' including hearsay evidence, without regard to admissibility under the Federal Rules of Evidence which govern at trial." *See United States v. Solis*, 299

F.3d 420, 455 (5th Cir. 2002) (citation omitted). "[A] district court may adopt the facts contained in a PSR without further inquiry if those facts have an adequate evidentiary basis with sufficient indicia of reliability and the defendant does not present rebuttal evidence or otherwise demonstrate that the information in the PSR is unreliable." *United States v. Cabrera*, 288 F.3d 163, 173-74 (5th Cir. 2002); *see Solis*, 299 F.3d at 455 (holding that the defendant bears the burden of rebutting the evidence used against him at sentencing and that merely objecting to the evidence is insufficient to rebut it).  Finally, we have held "§ 2D1.1(a)(2) is a strict liability provision that applies without regard for common law principles of proximate cause or reasonable foreseeability." *Carbajal*, 290 F.3d at 283.  The question is thus whether the PSR was sufficiently reliable to show that Reitz's death was caused by Greenough's heroin.

At sentencing, the district judge adopted the PSR with minor modifications.  The district court imposed a sentence within the Guidelines range and at the statutory maximum.  The evidence in the PSR was sufficient to show Greenough supplied the heroin that caused Reitz's death.  Her arguments raise legitimate questions about the strength of the evidence, but do not show that the information in the PSR "cannot be relied on because it is materially untrue, inaccurate, or unreliable." *Londono*,  285 F.3d at 354. Greenough admits to selling Reitz drugs and using drugs with him.  She only alleges that there is doubt whether her heroin was the heroin in Reitz's system when he died.  Because the death resulting enhancement is imposed with strict liability, Greenough has not proffered sufficient evidence to show the link between her drugs and Reitz's death is inaccurate or unreliable, and she cannot show the PSR is based on factual errors, we affirm the finding that there was sufficient evidence Greenough's drugs caused Reitz's death.

**CONCLUSION**

No. 10-50567

For the foregoing reasons, we AFFIRM the ruling of the district court.